KNAPP, RESPONDENT, *v.* ANDRUS, APPELLANT.

(No. 3,992.)

(Submitted March 21, 1919.   Decided April 28, 1919.)

[180 Pac. 908.]

*Attachment — Land—Sales—Escrows—Title—Execution—Supplementary Proceedings—Contracts—Practical Construction.*

Sales—Land—Escrows—Passing of Title.
   1.   Where land is sold under an escrow agreement providing for delivery of deed upon payment of the last installment of the purchase price, title remains in the grantor until full compliance with the terms of the contract and delivery of deed to the grantee.

   [As to escrow when the title passes on the performance of conditions and the occurrence of contingencies, see note in 130 Am. St. Rep. 958.]

Same — Escrows — Title — Attachment — Execution — Supplementary Proceedings.
   2.   Where land was sold under an agreement of the nature of the above, but before final payment had been made all the real estate of the seller had been attached, including the land so sold, and judgment recovered against him, the money thereafter deposited in bank by the purchaser as the final payment was impressed with the attachment lien and could properly be looked to to satisfy the judgment under proceedings supplemental to execution.

Contracts—Practical Construction.
   3.   Practical construction placed upon contract by the parties effectually removes uncertainty in the language employed.

*Appeal from District Court, Beaverhead County; Jos. C. Smith, Judge.*

ACTION by W. E. Knapp against F. M. Andrus.   Judgment for plaintiff, and from an order in proceedings supplemental to execution the First National Bank of Dillon and T. J. Mulany appeal.   Affirmed.

Cause submitted on briefs of Counsel.

*Messrs. Rodgers & Gilbert,* for Appellants.

*Messrs. Lew L. & E. J. Callaway,* for Respondent.

We admit that there was a deposit of the deed in escrow in the bank.   Did that transaction amount to a complete divestiture

of title by Andrus? Where was the title to this property while Mrs. Armstrong was in possession up to June 15, 1916? Can it be said that it was vested in her? The deed lay as a dormant instrument in the custody of the bank, without efficacy as a conveyance, until the condition was performed by Mrs. Armstrong, and a delivery of the deed was made to her by the bank. The conditions were such that if Mrs. Armstrong did nothing, the title remained in Andrus; but if she performed the conditions, that is, paid the full amount specified, within a certain time, and obtained from the bank a delivery of the deed, then the title thereby passed to her. (*Tyler* v. *Tyler,* 50 Mont. 65, 144 Pac. 1090; *McMurtry* v. *Bridges,* 41 Okl. 264, 137 Pac. 721; *Follmer* v. *Rohrer,* 158 Cal. 755, 112 Pac. 544; *Dyson* v. *Bradshaw,* 23 Cal. 528; *Gaston* v. *City of Portland,* 16 Or. 255, 19 Pac. 127, 128; *Jackson* v. *Rowland,* 6 Wend. (N. Y.) 666, 22 Am. Dec. 557; *Calhoun County* v. *American E. Co.,* 93 U. S. 124, 23 L. Ed. 826, 827.)

"The deposit of a deed in escrow does not constitute a delivery until performance of the conditions of the escrow. And the title remains meantime in the grantor, and subject to claims against him." (*Wolcott* v. *Johns,* 7 Colo. App. 360, 44 Pac. 675; *May* v. *Emerson,* 52 Or. 262, 16 Ann. Cas. 1129, 96 Pac. 454, 1065.) "The passing of title under an escrow deed, upon performance of the conditions upon which it was executed, will relate back to the execution of the deed only when justice requires it." (*Foxley* v. *Rich,* 35 Utah, 162, 99 Pac. 666.)

MR. JUSTICE COOPER delivered the opinion of the court.

Frank M. Andrus and wife, of Dillon, Beaverhead county, [1] Montana, on the twenty-fourth day of April, 1909, executed a written contract and deposited the same in escrow with the First National Bank of Dillon (accompanied by a warranty deed in the usual form), by the terms of which they agreed to sell to Flora Craver Armstrong a farm consisting of 2,395 acres, for a total consideration of $29.937.50. This writing provided for a cash payment of $2,000, and annual payments on the first day

of January of each succeeding year until fully paid, with interest at 8 per cent per annum, "as follows, to-wit: Interest at said rate is to be paid on each $2,000 payment on the first day of January of each year, and interest is to be paid at said rate on the balance due and upon each new principal, upon the 24th of April of each year." In case of failure to make the payments of principal or interest, the first parties at their option might declare the contract of purchase forfeited and retake possession of premises, applying the payments theretofore made as and for rent; the second party to surrender peaceable possession to said first parties; the defendant bank, upon demand, to redeliver the deed so executed to the first parties, their heirs and assigns, together with the contract to sell. Upon completion of the payments so agreed upon, as well as the payment of the taxes for the year 1909 and succeeding years, the deed so placed in escrow was to be delivered by the defendant bank to the purchaser, Flora Craver Armstrong. Time was to be of the essence of the agreement. The contract to sell was placed of record with the county recorder of Beaverhead county on December 22, 1911. On November 12, 1915, the respondent, W. E. Knapp, instituted a suit against the defendant Frank M. Andrus, attached all of the real estate standing in his name in said county, including the property described in the escrow agreement, and on January 29, 1916, recovered a judgment against him in the sum of $1,270 and costs. On June 15, 1916, Flora Craver Armstrong made final payment on her contract of purchase, and obtained from the bank the deed and other papers covering the transaction, the bank having delivered the prior payments to the first parties, as provided in the escrow agreement. On July 6, 1916, an execution, directed to the sheriff of Beaverhead county, was issued, and, after service on the bank and defendant Andrus, returned wholly unsatisfied. No complaint is made concerning the disposition of any of the money received under the contract, except $1,500 of the final installment, the bank disclaiming any interest in it, except to pay it to the proper party. On January 20, 1916, a date between the levy of the attachment and the entry of

judgment against Frank M. Andrus, a paper purporting to be an assignment of all of the right, title and interest of Frank M. Andrus in the contract was made and delivered by him to the defendant Mulany, the consideration of which was an indebtedness owing from Andrus to Mulany. Any balance that might remain in the hands of Mulany, after paying his own indebtedness in full, was to be paid over by Mulany to the wife of Frank M. Andrus.

This appeal is from an order made by the court below in a proceeding supplemental to execution on December 2, 1916, directing that the judgment and execution above referred to be satisfied and discharged out of a balance of $1,500 held by the bank, being part of the last installment paid under the escrow agreement by Flora Craver Armstrong.

The contention of appellants is that it was error on the part of the court below to hold that at the time of the levy of the writ of attachment the defendant Frank M. Andrus had an attachable interest in the property involved in the escrow agreement, and requiring satisfaction of that judgment out of the fund still in the hands of the bank under that agreement.

The respondent insists that under the escrow agrecment the title to the realty remained in Andrus until the payments were complete and the deed delivered to the grantee therein, and that the attachment, served according to the requirements of the statute, fixed itself upon the title and created a lien in favor of the attaching plaintiff.

Section 6661 of the Revised Codes authorizes the issue and levy of writs of attachment in cases such as these; section 6662, subdivisions 1 and 2 as amended (Laws 1911, Chap. 85, p. 153), prescribes the manner of the levy of the writ and to what kind of property it applies. Section 6687 says that all liens by attachment accrue at the time the property of the defendant shall be attached by the officer charged with the execution of the writ. In *Holter Hardware Co.* v. *Ontario Min. Co.,* 24 Mont. 184, 193, 61 Pac. 3, 6, this court said: ''The levy of the writ of attachment created the lien. The property was thereby seized and held. * * * An attachment having been levied within the life of

the writ, a lien is created, which may be enforced by execution sale without further levy." (See, also, *Ritter* v. *Scannell*, 11 Cal. 238, 70 Am. Dec. 775.) "All interests of the judgment debtor in real estate, whether recorded in his name or not, are subject to attachment and execution. (Rev. Codes, secs. 6662, 6821)." (*Koopman* v. *Mansolf*, 51 Mont., at page 57, 149 Pac. 494.) Beyond question, then, the attachment lien was effective, unless title passed immediately upon the deposit of the contract and deed with the escrow.

The ultimate question for decision, then, is: Did the title pass [2] immediately upon the execution and deposit of the escrow agreement, or only after a full compliance with its terms and a delivery by the bank in accordance therewith? And that raises the question as to what the parties intended in the employment of the terms found in the escrow agreement. The intention of the parties is to be ascertained from the language used in the contract, and sections 5025, 5026, 5027, 5028 and 5030 of the Revised Codes furnish the guide to its interpretation. The acts of the parties in the performance of the conditions of the contract show complete accord with its plain terms, and evince no misunderstanding of its requirements. The grantee went into possession of the land upon the making of the first payment, continued in possession, cultivated it, raised crops upon it, and made all the payments required of her, including the taxes; and after the payment of the final installment demanded, and received at the hands of the bank, the deed executed by Andrus and his wife in compliance with its terms. Under it, she was not entitled to the delivery of the deed until she had followed the directions of the escrow agreement step by step successively. Had she faltered in any one of them, her right to the delivery of the deed was gone, and she became a mere tenant at the option of the grantors, and could be dispossessed by them, the payments already made by her to be applied on, and considered as, rent. That the defendant Andrus anticipated her probable action in making the payment is evidenced by the fact that five months before the last payment was due he sold to Mulany all

his right, title, and interest in the contract and the money due thereunder as a final payment. Not until the legal proceedings instituted by Knapp against Andrus—the levy of an attachment upon his real estate had all but ripened into a final judgment—did it occur to defendant that he might forestall its effect by making an assignment of all of his remaining interest in the [3] contract. If the language employed in the escrow agreement were in any sense obscure or uncertain, the practical construction placed upon it by the parties served effectually to remove such obscurity or uncertainty. In view of the provisions of section 4599, Revised Codes, the deposit in escrow of the deed, accompanied by the contract, gives character to the transaction. The law applicable to this case has already been declared by this court in *Chadwick* v. *Tatem,* 9 Mont. 354, 23 Pac. 729, and *Tyler* v. *Tyler,* 50 Mont. 65, 144 Pac. 1090, and we believe it well settled in other jurisdictions. (*Wolcott* v. *Johns,* 7 Colo. App. 360, 44 Pac. 675; *May* v. *Emerson,* 52 Or. 262, 16 Ann. Cas. 1129, 96 Pac. 454, 1065; *McMurtry* v. *Bridges,* 41 Okl. 264, 137 Pac. 721; *Follmer* v. *Rohrer,* 158 Cal. 755, 112 Pac. 544; *Calhoun County* v. *American E. Co.,* 93 U. S. 124, 23 L. Ed. 826.)

Appellants contend that under section 6854, Revised Codes, the court below was without jurisdiction to make the order appealed from. In the view we take of the matter, the order of the court below was justified under section 6853, and section 6854 has no application to the present proceeding.

The order is affirmed.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE HOLLOWAY concur.